## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15-cv-11517-JCB |
| v. | ) ) | |
| VERTEX PHARMACEUTICALS INCORPORATED, TACTICAL ADVANTAGE GROUP, LLC and JOHN DOES 1-10, | ) ) ) ) | |
| Defendants. | ) | |

### PLAINTIFF'S MEMORADUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL CERTIFICATION OF SETTLEMENT CLASS

SWARTZ & SWARTZ
Alan L. Cantor, BBO #072360
10 Marshall Street
Boston, MA  02108
Telephone:  617-742-1900
Facsimile:  617-367-7193

ANDERSON + WANCA
Ryan M. Kelly, *admitted pro hac vice*
Ross M. Good, *admitted pro hac vice*
Wallace C. Solberg, *admitted pro hac vice*
Glenn L. Hara, *admitted pro hac vice*
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Facsimile:  847-368-1501

# TABLE OF CONTENTS

**Page**

Introduction ...............................................................................................................1

Background .................................................................................................................2

A.  Case History ...............................................................................................2

B.  The Parties' Settlement Discussions..........................................................4

C.   Preliminary Approval ................................................................................5

D.  Summary of Key Terms of Proposed Settlement ......................................7

    1.  Certification of a Settlement Class .................................................7

    2.  The Class Representative and Class Counsel .................................7

    3.  Monetary Relief to the Members od the Settlement Class . ............ 8

    4.  Clas Notice .....................................................................................8

    5.  Claims ............................................................................................9

        a.  Claim form ...........................................................................9

        b.  Claims Administrator ...........................................................9

    6.  Release ..........................................................................................10

    7.  Attorney's Fees, Costs and Incentive Award .......................................11

    8.  Class Action Fairness Act Notice .......................................................11

Argument ...................................................................................................................12

I.  The Court should grant final approval of the Settlement ................................12

II.  Notice of the Settlement Class satisfied Rule 23 and the requirements of due process ..20

CONCLUSION ..........................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arthur v. SLM Corp.*,
  No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012) ...................................................... 19

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,
  2017 WL 5177610 (D. Mass. 2017), appeal dismissed, 2018 WL 2337712 (1st Cir. 2018)
  ............................................................................................................................. 12, 14

*Bayat v. Bank of the W.*,
  No. C-13-2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)...................................... 19

*Bezdek v. Vibram USA, Inc.*,
  79 F. Supp. 3d 324 (D. Mass 2015)................................................................................. *passim*

*Bezdek*,
  809 F.3d at 82 ......................................................................................................... 12, 13

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996)....................................................................................... 12, 13

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).................................................... 14

*Disability Law Center v. Mass. Dep't of Corr.*,
  960 F. Supp. 2d 271 (D. Mass. 2012 ...................................................................... 13

*Durrett v. Providence Hous. Auth.*,
  896 F.2d 600 (1st Cir. 1990)........................................................................................ 19

*Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.*,
  No. 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010)............................................... 17

*Fauley v. Drug Depot, Inc.* ,
  323 F.R.D. 594 (N.D. Ill. 2018) ............................................................................. 17

*Fauley v. Heska Corporation*,
  15 C 2171, 2018 WL 4052161 (N.D. Ill. 2018) ...................................................... 17

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
  No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009)............................................... 17

*G.M. Sign, Inc. v. Group C. Comm'n, Inc.*,
  No. 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010)............................................ 17

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Greenspan v. Bogan*,
  492 F.2d 375 (1st Cir. 1974) ................................................................... 21

*Hichstadt v. Boston Sci. Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................ 14

*Hill v. State Street Corp.*,
  2016 WL 127728 (D. Mass. 2015 ............................................................ 16

*Hinman v. M & M Rentals,*
  545 F. Supp. 2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008) ......... 17

*Hispanics United of DuPage County v. Village of Addison, Ill.,*
  988 F. Supp. 1130 (N.D. Ill. 1997) ......................................................... 18

*Imhoff Inv., Inc. v. Sammichaels, Inc.*,
  No. 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012) ................... 17

*In re Austrian & German Bank Holocaust Litig.,*
  80 F. Supp. 2d 163 (S.D.N.Y. 2000) ...................................................... 18

*In re Capital One,*
  2015 U.S. Dist. LEXIS 17120  2015 WL 605203 .................................... 19

*In re Checking Account Overdraft Litig.*,
  No. 1:09-MD-02036-JLK, 2015 WL 12641970 (S.D. Fla. May 22, 2015) ............ 19

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 297 (N.D. Ga. 1993) ............................................................ 14

*In re Mexico Money Transfer Litig.,*
  164 F. Supp. 2d 1002 (N.D. Ill. 2001) .................................................... 18

*In re Pharma. Indus. Average Wholesale Price Litig.,*
  588 F.3d 24 (1st. Cir. 2009) ................................................................... 12

*In re SmithKline Beecham Corp. Sec. Litig.,*
  751 F. Supp. 525 (E.D. Pa. 1990) .......................................................... 18

*Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. Gen. Motors Corp.,*
  497 F.3d 615 (6th Cir. 2007) ................................................................. 19

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) ....................................................................... 13

*Mangone v. First USA Bank,*
    206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) ........................................................ 18

*McCabe v. Lifetime Entm't Servs., LLC,*
    2018 WL 1521860 (E.D.N.Y. Jan. 4, 2018) .................................................. 14

*Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund,*
    582 F.3d 30 (1st Cir.2009) ............................................................................ 12

*Paldo Sign v. Topsail,*
    No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010) ....................... 17

*Rankin v. Rots,*
    2006 WL 1876538 (E.D. Mich. June 27, 2006) ............................................ 19

*Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004) .................................. 20

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.,*
    No. 12 CV 2257, 2014 WL 6750690 (N.D. Ohio Dec. 1, 2014) .................... 17

*Schlensky v. Dorsey,*
    574 F.2d 131 (3d Cir. 1978) ......................................................................... 18

*Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.,*
    279 F.R.D. 442 (N.D. Ohio 2012) ................................................................. 17

*Stanspec Corp. v. Jelco, Inc.,*
    464 F.2d 1184 (10th Cir. 1972) .................................................................... 13

*Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.,*
    679 F. Supp. 2d 894 (N.D. Ill. 2010) ............................................................ 18

*Vertex Pharm. Inc.,*
    247 F. Supp. 3d at 151-52 ............................................................................ 15

*Whitford v. First Nationwide Bank,*
    147 F.R.D. 135 (W.D. Ky. 1992) .................................................................. 18

*Zerkle v. Cleveland-Cliffs Iron Co.*,
  52 F.R.D. 151 (S.D.N.Y. 1971) ............................................................................... 19

**Statutes**
28 U.S.C. § 1715(b) ........................................................................................................ 11
47 U.S.C. § 227 ................................................................................................................ 2


**Other Authorities**
7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed.
  2005) ............................................................................................................................ 20
Manual for Complex Litigation (Second) § 30.44 ......................................................... 16
Manual for Complex Litigation, Third, § 30.42 (1995) ................................................. 13


**Rules**
Fed. R. Civ. P. 23 ..................................................................................................... 1, 2, 20
Fed. R. Civ. P. 23(a) ...................................................................................................... 22
Fed. R. Civ. P. 23(b) ...................................................................................................... 22
Fed. R. Civ. P. 23(b)(3) ........................................................................................ 7, 20, 22
Fed. R. Civ. P. 23(c)(3) .................................................................................................. 21
Fed. R. Civ. P. 23(f) ....................................................................................................... 15
Fed. R. Civ. P. 30(b)(6) .................................................................................................... 4
Fed. R. Civ. P. 23(C)(1)(c) ............................................................................................ 15
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 21
Fed. R. Civ. P. 23(e)(1) .................................................................................................. 20

Plaintiff, Physicians Healthsource, Inc. ("Plaintiff" or "PHI"), respectfully submits this Memorandum in support of its unopposed motion for an order finally approving the parties' proposed class settlement ("Settlement") and certifying the class (the "Settlement Class") for settlement purposes.[1]

## Introduction

The Settlement, both as proposed to the Court for purposes of preliminary approval and as executed thereafter in accordance with the Court's instructions, plainly satisfies the Rule 23's requirements of fairness, adequacy and reasonableness, and the Court should therefore grant final approval.  The Settlement was reached following nearly three years of hard-fought litigation, and only after the completion of merits and class discovery, the Court's summary judgment decision, and the filing of Plaintiff's motion for class certification.  It is the product of extensive arm's-length settlement negotiations among the Plaintiff, Vertex Pharmaceuticals Incorporated ("Vertex"), and Vertex's insurer, Federal Insurance Company ("Federal"), with the involvement of Hon. Stephen E. Neel as a neutral mediator.  And it will result in payment of complete statutory damages to each member of the Settlement Class who submitted a claim.  The Settlement thus avoids the risks, uncertainties, expense and delay of protracted litigation, including the risk that the class recovers nothing, while providing members of the Settlement Class with the best possible outcome they could hope to achieve under the statute.  Given the excellent outcome for the proposed Settlement Class, it should come as no surprise that ***no class member objected to the Settlement, and no class member chose to opt-out.***

Moreover, and as set forth herein and in the accompanying Declarations, the Settlement was carried out pursuant to a reasonable, transparent and straightforward notice and claims process

---

[1]     As used herein, "parties" does not include Tactical Advantage Group ("TAG"), which is not participating in the Settlement.

that, as the Court has already found in its Preliminary Approval Order, meets the requirements of Rule 23 and due process and was the best plan of notice practicable under the circumstances.  The Settlement notice plan was carried out pursuant to the Court's instructions in the Preliminary Approval Order, resulted in the participation by putative Class Members that is in line with, or higher than, the typical response rate in TCPA class action settlements or judgments, and is similar to notice and claims procedures that are routinely approved in TCPA class actions by courts across the country.  Thus, as set forth below, the Court should finally approve the proposed Settlement and certify the Settlement Class, as the record, and the results of the claims process, conclusively establish the fairness, adequacy and reasonableness of the Settlement.  Indeed, putative Settlement Class members could not have achieved a better result had they prevailed at trial or brought individual claims.

## Background

### A.    Case History

As the Court is aware, this is a putative class action asserting violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*., stemming from alleged unsolicited faxes sent to Plaintiff and the putative class by Defendants Vertex and TAG.  Vertex develops, manufactures, and distributes pharmaceutical products, including the drug Incivek, a drug used in combination with others to treat the hepatitis C virus ("HCV").[2]  In 2011, Vertex contracted with TAG, a medical communications and meetings logistic vendor, to present a satellite broadcast to various health care specialists concerning Incivek and its use in the treatment of HCV.  TAG and Vertex recruited participants by, among other things, faxing invitations (the "Faxes") to the June

---

[2]      Vertex voluntarily withdrew Incivek from the market in 2014.

9, 2011 satellite broadcast (the "June 9 Broadcast") to physicians whose contact information TAG maintained in a proprietary database.

Plaintiff is a chiropractic and pain management clinic located in Cincinnati, Ohio.  In June 2011, Plaintiff received three Faxes relating to the June 9 Broadcast.  Plaintiff alleges that the Faxes are "advertisements" sent without its prior express permission and without required opt-out language.  Accordingly, in April 2015, Plaintiff, on behalf of itself and a putative class of others, filed this putative class action lawsuit alleging that Vertex and TAG violated the TCPA by sending the allegedly unsolicited Faxes concerning the June 9 Broadcast.

As set forth in detail in Plaintiff's memorandum in support of preliminary approval of the Settlement, and as the nearly 200 docket entries reflect, this case was heavily litigated and hard-fought from the start:

- Vertex and TAG both moved to dismiss the complaint, which Plaintiff opposed and the parties fully briefed (Doc. Nos. 19);

- Vertex filed multiple discovery motions, including motions for spoliation and to strike, which Plaintiff opposed and the parties fully briefed (Doc. Nos. 82, 109, 111);

- Numerous additional discovery disputes were resolved among the parties;

- Vertex, TAG and PHI each separately moved for summary judgment, which the parties fully briefed and the court ultimately denied in a written decision (Doc. Nos. 72, 75, 79, 125);[3] and,

- Plaintiff filed an initial, placeholder motion for class certification and later briefed and filed a separate, contested motion for class certification, which was mooted by the settlement (Doc. Nos. 2, 150).

Accordingly, the record is clear that, leading up to settlement, parties spent considerable time, effort and expense in litigating and defending against the claims and legal theories asserted here,

---

[3] As noted in Plaintiff's preliminary approval memorandum, the parties' summary judgment-related submissions ran to thousands of pages, and occupy in excess of fifty entries on the Court's docket.  (*See* Doc. Nos. 60-125.)

and were fully informed of the strengths and weaknesses of their positions when the Settlement was reached.

In addition, the parties completed two rounds of extensive discovery, which focused first on the merits of Plaintiff's claims and thereafter on class certification issues. At each stage of discovery, the parties propounded and responded to voluminous written discovery and produced and reviewed thousands of pages of electronic documents. Ten party depositions were taken, including multiple Rule 30(b)(6) depositions for each of PHI, TAG and Vertex. In the course of class discovery, moreover, Plaintiff adduced fax transmission records (the "Fax Transmission Records") which reflected that 8,809 Faxes concerning the June 9 Broadcast were successfully transmitted between June 3, 2011 and June 9, 2011 to 4,778 unique fax numbers. At the time the settlement was reached, the parties had completed all discovery, and therefore continued litigation would not have affected the evidentiary record in the case.

### B.     The Parties' Settlement Discussions

After the close of discovery, and mindful of the Court's decision denying summary judgment to all parties, PHI and Vertex entered into settlement discussions in an effort to resolve the case. In September 2017, they participated in a full-day mediation with the Hon. Stephen E. Neel (ret.). Although the initial mediation did not resolve the case, the parties continued thereafter to discuss a potential resolution. Given the momentum behind settlement discussions, in the fall of 2017 the parties sought and were granted several extensions of Plaintiff's deadline to move for class certification as they continued to negotiate. (*See* Doc. Nos. 142-146.)

Plaintiff filed its contested motion for class certification on November 22, 2017. The parties, however, continued to engage in productive discussions. In early December, the parties reached an agreement in principal as to key settlement terms, although certain disputes remained.

4

Accordingly, the parties re-engaged Judge Neel to mediate their efforts to develop a reasonable, fair and transparent notice and claim process to effectuate the Settlement.  The parties moved to stay the case in December 2017, which the Court allowed, as their discussions neared a final agreement.  (Doc. No. 157-58.)

Eventually, after nearly three years of heavily contested litigation, extensive negotiations, and mediation before the Hon. Stephen E. Neel, in early February 2018 Plaintiff and Vertex entered into a written settlement agreement to resolve their dispute that, subject to the Court's approval, the parties anticipated would – and, as it turns out, will – result in the payment of complete statutory relief ($500) under the TCPA to each member of the proposed Settlement Class who submitted a claim, without any reduction or proration for fees and expenses.  Vertex's insurer agreed to fund the Settlement by making up to $4,750,000.00 available.[4]

### C.   Preliminary Approval

On February 2, 2018, Plaintiff filed its motion seeking the Court's preliminary approval of the proposed Settlement.  (Doc. Nos. 159-60.)  The Court held an initial hearing on March 14, 2018 to consider the settlement terms and the notice and claims process proposed in the Settlement Agreement.  (Doc. No. 175.)  Following the hearing, the Court issued an order requesting certain information from Plaintiff, which Plaintiff provided, and requiring certain changes to, among other things, the proposed class notice and claims forms, which were made.  (Doc. Nos. 176, 182, 190.)  On May 1, 2018, the Court held a second preliminary approval hearing.  (Doc. No. 181.)  On May 30, 2018, after consideration of the Settlement Agreement, the plan of notice, and the proposed

---

[4]      The parties structured the settlement on a claims-made basis to reflect the practical reality that class member response rates in TCPA settlements or judgments are highly variable and uncertain (but never come close to 100%).  It was designed to provide a mechanism that, factoring in anticipated response rates, would result in a payment of complete statutory damages to interested, participating class members.

claims process, the Court granted preliminary approval of the Settlement.   (Doc. No. 194 ("Preliminary Approval Order").)

In accordance with the Court's Preliminary Approval Order, on June 13, 2018 Plaintiff, through the Class Administrator, caused the class notice to be sent by fax and, if transmission via fax was unsuccessful after three attempts, by U.S. mail to the 4,778 unique fax numbers identified in discovery.  *See* Declaration of Dorothy Sue Merryman "*Merryman Decl.*", Exhibit B.  In total, notice was successfully transmitted by fax to 4,109 fax numbers, and mailed to 669 individuals or entities after transmission by fax was unsuccessful.  *See id*.  A copy of the publication notice approved by the Court appeared in *USA Today* on June 13, 2018. *Id.*; *see also* Merryman Decl., Exhibit B, Ex. 3 thereto (Certificate of Publication).

Following the end of the claims period set forth in the Court's Preliminary Approval Order, members of the putative Settlement Class submitted 392 approved claim forms covering 702 fax transmissions.  *Id.*[5]  As a result, upon final approval, each member of the potential Settlement Class that has submitted an approved claim will receive full and complete statutory damages, without any reduction or proration for attorneys' fees or other settlement costs.  As such, class members will receive more than they would otherwise receive had they succeeded after a trial or hired counsel and pursued an individual TCPA claim, as the statute contains no fee-shifting

---

[5]      The Claims Administrator received 440 Proofs of Claim in response to the Class Notice and 2 Proofs of Claims in response to the Publication Notice.  *See* Merryman Decl., ¶ 18. It rejected 20 claims as untimely, because they were submitted after the close of the claims period; 44 claims because they were identified as a duplicate of claims already submitted by the class member (e.g., the same claim form was submitted both via fax and U.S. mail); and 4 claims because the claimant failed to properly complete and sign the form, or failed to provide a fax number that appeared in the fax transmission records or any other evidence that they had received a fax.  *Id*. ¶¶ 20, 24. Two Publication Claim Forms were submitted, but without any accompanying evidence that the claimants had received one of the faxes at issue.  *Id*. ¶ 22. Accordingly, the Claims Administrator rejected those claims.  *Id*.

provision.  Moreover, as noted, no members of the proposed Settlement Class objected and no members chose to be excluded.  *See* Declaration of Susan Vega, Exhibit C.

### D.  Summary of Key Terms of Proposed Settlement

Plaintiff and Vertex reached the Settlement after reviewing and analyzing the legal and factual issues presented by this action, including the complete evidentiary record produced in discovery; the risks, uncertainties, expenses, and distraction involved in pursuing the lawsuit through class certification to conclusion; the likelihood and uncertainties of protracted litigation; and the likelihood, costs, and possible outcomes of one or more procedural or substantive appeals. Based upon their review and analysis, Plaintiff and Vertex (and Vertex's insurer) agreed to the Settlement.  As the Court is aware from its preliminary approval of the Settlement, its key terms are as follows:

**1.  Certification of a Settlement Class**.  The Parties have stipulated, by agreement and for settlement purposes only, to certification of a Rule 23(b)(3) "Settlement Class" defined as: "All persons or entities in the United States who were successfully sent one or more unsolicited facsimiles inviting recipients to an 'interactive meeting presented via satellite' on June 9, 2011 and stating 'Incivek:  A Change in the Treatment Paradigm' and 'NEW INCIVEK (telaprevir) tablets….'"[6]  The Court reviewed and provisionally certified a class pursuant to this Class Definition in its May 30, 2018 Preliminary Approval Order (at ¶ 2).

**2.  The Class Representative and Class Counsel.**  The Parties have agreed to the appointment of Plaintiff as the Class Representative and of Plaintiff's attorneys (Ross M. Good of Anderson + Wanca and Alan L. Cantor of Swartz & Swartz) as Class Counsel for the Settlement

---

[6]  Excluded from the Settlement Class are TAG, Vertex, and Federal, including any and all of their parents, subsidiaries, affiliates, control persons, as well as their officers, directors, members, managers, agents, servants, and employees and the immediate family members of such persons.

Class.  The Court reviewed and preliminarily approved the proposed class representative and Class Counsel in its May 30, 2018 Preliminary Approval Order (at ¶ 5).

      **3.**      **Monetary Relief to the Members of the Settlement Class.**  Defendant Vertex agreed to make available (through its insurer) a total of up to $4,750,000.00 (the "Settlement Fund") to pay valid class member claims, to pay any incentive payment to the Class Representative, to pay attorney's fees in the amount ordered by the Court (not to exceed one third of the Settlement Fund) and reasonable litigation costs and expenses (not to exceed $90,000.00), including court-approved costs and expenses associated with claims administration.  Except for the agreed payments (approved claims of class members, to Class Counsel, or to the Class Representative), Vertex and Federal will keep all unclaimed funds.  As noted, because class members have submitted claims that, in the aggregate, equal less than the full value of the Settlement Fund (after factoring in maximum allowable fees and costs), each class member is expected to receive a payment per fax in the amount of full statutory damages ($500) available under the TCPA.

      **4.**      **Class Notice.**  As the Court is aware, Plaintiff notified the Settlement Class about the settlement by sending the notice and claim form by facsimile to the known fax numbers associated with the 8,809 Faxes identified in the Transmission Records, and by U.S. Mail to class members whose facsimile notice failed after three attempts.  Merryman Decl., ¶¶ 12, 14, Exhibit B. The notice and claim form were also made available on the Claims Administrator's website. The notice included instructions, in plain English, describing how to opt out, object, or submit a claim form by fax, mail, or electronically to the Claims Administrator, and included Class Counsel's telephone number for people to call with questions.  *Id.,* Ex. 1.  Additionally, the short form notice was published one time in *USA Today* on June 13, 2018.  *Id.,* ¶ 8.  A separate claim

form was available for any claimant who was not included in the list of fax numbers associated

with the 8,809 Faxes identified in the Transmission Records.   The Court reviewed and

preliminarily approved the Settlement plan of notice in its May 30, 2018 Preliminary Approval

Order.   The notice plan was carried out as directed by the Court.   *See generally* Merryman Decl.,

Exhibit B.

           **5.**      **Claims.**

           **a.**      **Claim Form.**  The class notice preliminarily approved by the Court

included a simple, one-page claim form for submitting claims for statutory damages.   The claim

form for class members with fax numbers listed in the Transmission Records is the fourth page of

Exhibit 2A to the Settlement Agreement (the "Claim Form").   On the Claim Form, a class member

was asked to affirm that a fax number identified as having received one or more of Vertex's faxes

belonged to the class member or his/her business during June 2011, when the Faxes were sent.

They did not need to possess the Faxes at issue, remember receiving the Faxes, or know anything

about Vertex, TAG or PHI.   There was a separate claim form for claimants with a fax number(s)

that did not appear in the Transmission Records, which is Exhibit 2C to the Settlement Agreement

("Publication Claim Form").   In addition to the requirements of the Claim Form, the Publication

Claim Form additionally required the claimant to attach each fax or transmission records showing

that they received one or more of the Faxes.[7]

       The Court reviewed and preliminarily approved the form and content of the claim forms in

its May 30, 2018 Preliminary Approval Order.   Thereafter, the claims forms were disseminated in

the same form and manner as preliminarily approved by the Court.   *See generally* Merryman Decl..

---

[7]      This additional requirement for claims submitted in response to the Publication Notice was, as a practical matter, necessary to prevent a deluge of fraudulent claims.

    **b.**  **Claims Administrator.**  Class-Settlement.com is the Claims Administrator.  As set forth in the attached Merryman Decl., and as directed by the Court, Class-Settlement.com issued the class notice, maintained the settlement website, assisted class members that requested such assistance in completing and submitting forms, received the Claim Forms and Publication Claim Forms, and provided a list of approved and rejected claims to counsel for the Parties.  Per the Settlement Agreement and Preliminary Approval Order, the Claims Administrator determined the validity of submitted Claim Forms by confirming that the claimant completed all required steps set forth in the Claim Form, signed all required verifications, and that the claimant provided information that is consistent with, and appears in, the Transmission Records.  *See generally* Merryman Decl..  The parties are finalizing their review the claims submitted, and have until September 11, 2018 to object to their timeliness or validity under the terms of the Settlement.  If, as a result of their ongoing review, any information set forth in this memorandum or its accompanying Declarations is revised, Plaintiff will provide a written update to the Court before the hearing filed via ECF.[8]

    **6.**  **Release.**  As preliminarily approved by the Court, members of the Settlement Class and Plaintiff's counsel will release and forever discharge all claims that were brought or could have been brought in this action against Vertex or Federal that arise out of or relate to the Faxes concerning the June 9 Broadcast.  This release does not include any other advertisements or facsimiles sent by or on behalf of Vertex concerning any other programs.  Thus,

---

[8]  Plaintiff will provide the Court with a list of approved and unapproved claims, or the claims forms themselves that class members submitted, if the Court so requests.  Because those documents contain personal identifying information of class members, however, if the Court makes such a request Plaintiff respectfully asks to be allowed to file them under seal.

the settlement includes standard release language that is routinely approved in class action settlements, including TCPA cases.[9]

    7.    **Attorney's Fees, Costs and Incentive Award.** Class Counsel is separately applying to the Court to approve an award of attorney's fees plus reasonable and documented out-of-pocket expenses, including costs of the third-party Claims Administrator. Class Counsel is petitioning the Court to approve an incentive award of $15,000.00 from the Settlement Fund to PHI for serving as the Class Representative.  Plaintiff understands, as the Court stated at the preliminary approval hearing, that such amounts must be requested in a separate petition. Additionally, per the terms of the parties' Settlement, the Court's consideration of Class Counsel's fee petition and Plaintiff's incentive award is separate from its consideration of the fairness, adequacy and reasonableness of the Settlement for purposes of final approval, and any fee awards shall be set forth in a separate order.

    8.    **Class Action Fairness Act Notice.** Pursuant to 28 U.S.C. § 1715(b), Defendant has provided appropriate notice to the Attorney General of the United States and the Attorneys General of all fifty states and filed an affidavit of counsel certifying compliance with the notice requirements of the Class Action Fairness Act with this Court.  (Doc. No. 185).[10]

---

[9]      This settlement will not release any other claims of Vertex, Federal, or their assignees, including without limitation any claim for indemnity, contribution or breach of contract against TAG or any party related to TAG.
[10]     Note that the Affidavit of Compliance submitted in May 2018 (Doc. 185) inadvertently described the CAFA Notice as the Class Notice in paragraph 7.

**ARGUMENT**

**I.     The Court should grant final approval of the Settlement.**

**A.     Standard for judicial evaluation and final approval.**

A district court should grant final approval of a class settlement "if it is fair, adequate and reasonable." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In making this determination, the Court "balance[s] the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir.2009).  Depending on the case, courts typically consider factors including, without limitation:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 344 (D. Mass 2015) (citing cases and noting that courts may also look to "[v]ariations on and abbreviations of" relevant factors, depending on the particular facts of the case, for purposes of approving settlement); *see, e.g., Bacchi v. Massachusetts Mut. Life Ins. Co.*, 2017 WL 5177610, at *1 (D. Mass. 2017), appeal dismissed, 2018 WL 2337712 (1st Cir. 2018).

Moreover, in this analysis, courts should be mindful of the "important concern" of "facilitating a settlement in a hard-fought, complex class action." *In re Pharma. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 (1st. Cir. 2009).  Courts should also take account of the significant public interest in settling and quieting expensive and resource-consuming litigation,

particularly class actions.  *See Isby v. Bayh,* 75 F.3d 1191, 1996 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also Stanspec Corp. v. Jelco, Inc.*, 464 F.2d 1184, 1187 (10th Cir. 1972) ("The law encourages compromise and settlement of disputes.").  Here, as set forth below, consideration of the relevant factors overwhelmingly supports final approval.

> **1.    The Settlement is the result of arm's-length negotiations and mediation before a third party mediator, and is thus presumptively fair and reasonable.**

Where the "parties negotiated at arm's length and conducted sufficient discovery, the ***district court must presume the settlement is reasonable***." *Bezdek*, 809 F.3d at 82 (emphasis added); *see, e.g.*, *City P'ship Co.*, 100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."); *Disability Law Center v. Mass. Dep't of Corr.*, 960 F. Supp. 2d 271, 280-81 (D. Mass. 2012 (Wolf, C.J.) (presumption of reasonableness applied where settlement "was reached after the plaintiff received substantial formal and informal discovery, and was the result of years of arduous, arm's length negotiations by energetic and experienced counsel"); *see also* Manual for Complex Litigation, Third, § 30.42 (1995) (explaining that courts generally presume that "a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery" is "fair, reasonable and adequate" for purposes of final approval).

Here, the Settlement was reached only after the completion of substantial discovery, years of hard-fought litigation, and extensive arm's-length settlement negotiations between experienced counsel with a well-developed understanding of the strengths and weaknesses of their respective positions, who were aided by an experienced, neutral mediator, the Hon. Stephen Neel (Ret.). Indeed, the case was litigated for nearly three years—through summary judgment—before the

Settlement was reached.  Ten depositions were taken and thousands of documents were reviewed and analyzed by the parties.  As a result, the parties were aware of, and understood, the relevant facts, issues, and evidence, and made an informed decision at the time they negotiated and reached agreement on the Settlement terms.  *See, e.g.*, *Hichstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010) (key issue for final approval is whether parties conducted sufficient discovery "to make an intelligent judgment about settlement").

Thus, because the record and case history establish that the Settlement, far from the product of any sort of collusion, was the result of adversarial negotiations that took place with the benefit of a complete evidentiary record, it is entitled to the ***presumption*** of fairness, reasonableness and adequacy under a long and well-established line of cases.  *See, e.g.*, *Bacchi*, 2017 WL 5177610, at *2 (finally approving class settlement where the "proposed settlement comes as the result of arm's length negotiations between experienced and competent counsel for both parties," and "after a formal mediation before a neutral mediator"); *see, e.g.*, *Bezdek*, 809 F.3d at 82.

### 2.    The Settlement avoids complex issues that will be expensive, risky, and time-consuming to litigate and provides complete relief.

Courts also consider the extent to which settlement avoids protracted and expensive litigation of complex claims with an uncertain likelihood of success.  The Settlement accomplishes precisely that goal.  As an initial matter, class actions have a well-deserved reputation for complexity, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)), and claims under the TCPA are no exception, *see, e.g.*, *McCabe v. Lifetime Entm't Servs., LLC*, 2018 WL 1521860, at *17 (E.D.N.Y. Jan. 4, 2018) (commenting generally on the complexity of claims brought under the TCPA). Moreover, in this case, the complexity of the class claims is evident from the extensive litigation and motion practice they engendered at every stage of the proceedings, which has included motions

14

to dismiss, discovery motions, summary judgment motions and, at least initially, a contested motion for class certification.  Had the case not settled, those complexities would likely have resulted in extensive briefing of class certification, additional discovery motions, and—if class certification was granted—a trial on the merits.

Further, Plaintiff's likelihood of success on a contested motion for class certification and ultimately at trial is far from guaranteed.  For example, if no settlement had been reached, Plaintiff would need to defeat a challenge by Defendant to the propriety of class certification based on, among other things, the typicality of Plaintiff's claims and the availability of unique defenses, including whether putative class members gave permission to receive the faxes..  Moreover, even if the Court granted class certification on a contested basis in response to Plaintiff's motion, the class would still face the risk of a Rule 23(f) petition and possible decertification at a later stage of proceedings.  *See* Fed. R. Civ. P. 23(C)(1)(c) (providing court may decertify class at any time prior to judgment).  The Settlement avoids such risks.

In addition, as the Court pointed out in its Summary Judgment decision, this case presents a genuine dispute over the core issue of whether the faxes at issue qualified as "advertisements" within the meaning of the TCPA, or merely "concerned an educational program presenting important clinical and patient safety information concerning the treatment of HCV," and were therefore not actionable advertising under the TCPA.  *Vertex Pharm. Inc.*, 247 F. Supp. 3d at 151-52.  In its summary judgment decision, the Court thus found that the central issue determining liability in this case is essentially a jump ball for the jury.  Accordingly, even if the Court certified the class on a contested basis, any recovery by the class would remain uncertain and far from guaranteed.  Under the terms of the Settlement, however, every class member who elected to

participate in the settlement will, upon Court approval, recover full and complete statutory damages by submitting a simple one-page claim form.

Moreover, even if Plaintiff prevailed at trial, it would not avoid the practical complexities of administrating and carrying out a class-wide judgment, which as a practical matter would closely resemble the claims process negotiated and carried out by the Parties in the Settlement. The Settlement thus allows the parties (and the Court) to avoid the complexity and attendant expense, delay, and uncertainty of litigating Plaintiff's claims to verdict, all of which would reduce the net benefit to class members. *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 344 (granting final approval where, among other things, "extend[ing] the litigation and associated costs further" would "decreas[e] the net benefit of any damages award obtained at trial").

Significantly, the Settlement accomplishes these benefits while, at the same time, providing ***full and complete statutory relief*** to each member of the proposed Settlement class who elected to submit a claim. Typically, courts considering final approval analyze, under a business judgment standard, whether a ***reduced*** award to class members is a reasonable compromise in view of "the strengths and weaknesses of the case." *Hill v. State Street Corp.*, 2016 WL 127728, at *10 (D. Mass. 2015); *Bezdek*, 79 F. Supp. 3d at 345 ("In assessing the reasonableness of a proposed settlement, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" (quoting Manual for Complex Litigation (Second) § 30.44)). Here, however, class members were not asked to compromise the value of their individual claims, and the Court need not make such judgments. The Settlement was drafted to provide, and will provide, full statutory damages to each class member, without any reduction or set-off to cover fees or expenses. *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 345 ("The key question is whether the relief provided

by the settlement is reasonable in relation to the likely outcome were the case to proceed to trial."). Accordingly, because the TCPA contains no fee-shifting provision, the class members will achieve a better outcome under the Settlement than if the case had proceeded to trial, all without having to face the risks and uncertainties of contested class certification and a trial where they could recover nothing.[11]

### 3.    Opinion of Class Counsel and Class Representative.

Plaintiff and its counsel have concluded that the terms and conditions of this Settlement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Class Counsel have substantial experience litigating class actions, including claims under the TCPA concerning unsolicited faxes. They have been appointed class counsel in dozens of cases, including numerous TCPA cases. *See, e.g., Fauley v. Heska Corporation,* 15 C 2171, 2018 WL 4052161 (N.D. Ill. 2018); *Fauley v. Drug Depot, Inc. ,* 323 F.R.D. 594 (N.D. Ill. 2018); *Imhoff Inv., Inc. v. Sammichaels, Inc.*, No. 10-10996, 2012 WL 4815090 (E.D. Mich. Oct. 1, 2012); *Exclusively Cats Veterinary Hospital v. Anesthetic Vaporizer Services, Inc.,* No. 10-10620, 2010 WL 5439737 (E.D. Mich. Dec. 27, 2010); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.,* No. 12 CV 2257, 2014 WL 6750690 (N.D. Ohio Dec. 1, 2014); *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.,* 279 F.R.D. 442 (N.D. Ohio 2012); *G.M. Sign, Inc. v. Finish Thompson, Inc.,* No. 07 CV 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009); *G.M. Sign, Inc. v. Group C. Comm'n, Inc.,* No. 08 CV 4521, 2010 WL 744262 (N.D. Ill., Feb. 25, 2010); *Hinman v. M & M Rentals,* 545 F. Supp. 2d 802 (N.D. Ill. 2008), *app. denied* (June 17, 2008); *Paldo Sign v.*

---

[11]     Neither Vertex's agreement to take no position on Plaintiff's separate attorney fee or incentive award petitions, nor the structure of the settlement fund, should affect the Court's analysis in the circumstances here.  To be sure, courts will often scrutinize so-called "clear sailing" provisions and settlements with a reversionary component, but only because those terms nearly always have a negative effect on the award paid to the class.  Here, however, those terms present no such risk—the class will receive in the Settlement, once approved, every cent of available damages under the TCPA.

*Topsail,* No. 08 C 5959, 2010 WL 4931001 (N.D. Ill. Nov. 29, 2010); *Targin Sign Systems, Inc. v. Preferred Chiropractic Ctr., Ltd.,* 679 F. Supp. 2d 894 (N.D. Ill. 2010).

Under these circumstances, and in view of Class Counsel's extensive TCPA and class action experience, the Court should give weight to Class Counsel's opinions about the Settlement, which further supports the presumptive reasonableness of the Settlement.

### 4. The reaction of absent class members supports final approval.

A low rate of opt-outs or opposition "is strong circumstantial evidence in favor of the settlements." *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (considering high acceptance rate in granting final approval). Here, the Class Members overwhelmingly – indeed, unanimously – support the settlement: *no Class Members objected to the settlement, and none chose to be excluded*. *See* Declaration of Susan Vega, Exhibit C; *see, e.g.,* *Mangone v. First USA Bank,* 206 F.R.D. 222 (S.D. Ill. Feb. 2, 2001) (low opt-out and objection statistic showed that approximately 99.99% of the class elected to take part in the settlement); *Schlensky v. Dorsey,* 574 F.2d 131, 148 (3d Cir. 1978); *In re SmithKline Beecham Corp. Sec. Litig.,* 751 F. Supp. 525, 530 (E.D. Pa. 1990); *Hispanics United of DuPage County v. Village of Addison, Ill.,* 988 F. Supp. 1130, 1169 (N.D. Ill. 1997) (settlement fair where only a small number of class members objected); *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 163, 175 (S.D.N.Y. 2000) (a small number of objectors is "indicative of the adequacy of the settlement"); *Whitford v. First Nationwide Bank,* 147 F.R.D. 135, 141 (W.D. Ky. 1992) ("small number of objectors is a good indication of the fairness of the settlement").

Moreover, the response rate (covering approximately 8% of putative claims) is consistent with, if not higher than, response rates in other TCPA class action settlements, including those submitted to the Court (which ranged from 4.69% to 16.28%) and in reported cases. *See, e.g.,*

*Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (final approval of TCPA class settlement with 1.9% response rate) (citing *In re Capital One*, 2015 U.S. Dist. LEXIS 17120 at *10, 2015 WL 605203 (7.87% TCPA response rate); and *Arthur v. SLM Corp.*, No. C10-0198 JLR (W.D. Wash. Aug. 8, 2012), Docket No. 249 at 2-3 (noting roughly 2% TCPA response rate)). Thus, the participation rate of class members further supports the Court's final approval of the settlement.

### 5.    The Settlement is in the public interest.

Courts consistently recognize "the clear policy in favor of encouraging settlements," especially in the class action context. *Durrett v. Providence Hous. Auth.*, 896 F.2d 600, 604 (1st Cir. 1990) (reversing denial of approval of class action settlement as an abuse of discretion). A settlement of class action litigation, which drains party and judicial resources, serves the public interest. *See, e.g.*, *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of America v. Gen. Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007). In evaluating a proposed class action settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question ... is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2015 WL 12641970, at *6 (S.D. Fla. May 22, 2015) (citing *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006)) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).

Here, the parties reasonably and on the basis of a complete evidentiary record made an informed determination that, rather than incur the risks and expense of contested class certification proceedings and a trial, it was in the best interests of all involved to settle the claims by making a payment of what was expected to be, and turned out to be, full and complete statutory relief to

each member of the Settlement Class who elected to submit a claim.  Thus, after the close of

discovery, the parties extensively negotiated, with the assistance of Judge Neel, a fair and

transparent procedure for notifying putative class members that was intended to reach each

individual and entity identified in discovery as having received a fax, along with a claims process

designed to be simple and straightforward.  And class members could have received no better

result if they had pursued their claims to trial and succeeded at both the certification stage and on

the merits.  Accordingly, based upon the foregoing, and the presumptive reasonableness of the

settlement, Plaintiff requests that the Court finally approve the proposed Settlement and certify the

proposed Settlement Class.

## II.     Notice to the Settlement Class satisfied Rule 23 and the requirements of due process.

Settlement approval also "requires confirmation that notice was conducted in a reasonable

manner, consistent with Fed. R. Civ. P. 23 and due process concerns." *Bezdek*, 79 F. Supp. 3d at

336.  Rule 23(b)(3) requires the Court to "direct to class members to the best notice that is

practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort."  Rule 23 further requires the Court to "direct notice in a

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P.

23(e)(1).  For purposes of meeting due process requirements, "it is the court's duty to ensure that

the notice ordered is reasonably calculated to reach the absent class members," not to "guarantee

that every member entitled to individual notice receives such notice." *Reppert v. Marvin Lumber

& Cedar Co.*, 359 F.3d 53, 56 (1st Cir. 2004).  The Court has wide discretion both as to the manner

in which notice is given and the form that notice is to take. *See, e.g.*, 7B Charles Alan Wright et

al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

Here, the Court has already determined, on a preliminary basis, that the notice plan proposed in the Settlement was the "best practicable under the circumstances" and meets all requirements of due process and Rule 23.  Preliminary Approval Order, at 5.  And, in accordance with the Court's Order, Plaintiff caused the notice to be disseminated in the same manner and form approved by the Court, and so there therefore no reason for the Court to change its opinion.  *See* Merryman Decl. ¶ 13.  As set forth in the attached Merryman Decl., the class notice was successfully transmitted to 4,109 fax numbers identified in discovery, and sent by mail to an additional 669 potential class members after transmission by fax was unsuccessful.  *See* Merryman Decl. ¶ 17.  As a backstop, on June 13, 2018, notice was also published one-time in USA Today.  *See* Merryman Decl. ¶ 8, and Ex. 3 thereto.  Moreover, the notice resulted in a response rate of approximately 8%, which (as noted) is consistent with, if not higher than, the typical response rate in TCPA actions, which further confirms that dissemination of the notice was effective.

Moreover, as the Court also found when granting preliminary approval, the content of the notice included all of the information required by Rule 23, and thus "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them."  *Greenspan v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974); *see also* Preliminary Approval Order ¶ 5.  The content of the notice has not changed since the Court issued its Preliminary Approval Order.  It is a simple, 1-page form that, in plain English, described "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B); *see also* Merryman Decl. Exhibit B,

Ex. 1.  This is all the information that is required.  *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 336 (discussing notice requirements).

Notably, the claims form did not impose any onerous conditions for participation in the settlement, but rather was intended to encourage the submission of valid claims.  Thus, each Settlement Class Member merely had to provide their contact information and verify that the subject fax number belonged to them or their business in June 2011.  *Id.*  They did not need to provide copies of the subject fax, or attest to remember receiving the subject fax unless they were not listed in the 4,778 fax numbers provided by TAG in the fax transmission data produced in discovery.

For these reasons too, the Settlement's notice plan, including direct notice to class members via fax and email, satisfied the requirements of Rule 23, was the best method of notice available and practicable under the circumstances, and allowed for maximum reach to potential members of the Settlement Class.  Indeed, courts routinely approve TCPA settlements that similarly provide for notice to class members via fax, mailing, and publication.[12]

## CONCLUSION

The Court should approve the Settlement as fair, reasonable, and adequate and in the best interests of the settling parties and the Class. The parties' proposed order is submitted with this brief as Exhibit D.

---

[12]     As the Court is aware, to obtain class certification, the plaintiff must also establish each of the four elements of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one of the elements of Rule 23(b) (here, Rule 23(b)(3) are met. *Bezdek*, 79 F. Supp. 3d at 337.  Plaintiff addressed in detail the propriety of certification of the settlement class in light of these factors in its memorandum filed in support of preliminary approval of the Settlement, and the Court provisionally certified the Settlement Class in its Preliminary Approval Order.  Because the considerations and arguments supporting certification of the Settlement Class have not changed, Plaintiff will not repeat them here.

Respectfully submitted,

s/ Ross M. Good
    Ross M. Good

SWARTZ & SWARTZ
Alan L. Cantor, BBO #072360
10 Marshall Street
Boston, MA  02108
Telephone:  617-742-1900
Facsimile:  617-367-7193

MONTGOMERY, RENNIE & JONSON
Matthew E. Stubbs, *admitted pro hac vice*
36 E. Seventh Street, Suite 2100
Cincinnati, OH  45202
Telephone:  513-241-4722
Facsimile:    513-241-8775

ANDERSON + WANCA
Ryan M. Kelly, *admitted pro hac vice*
Ross M. Good, *admitted pro hac vice*
Wallace C. Solberg, *admitted pro hac vice*
Glenn L. Hara, *admitted pro hac vice*
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone:  847-368-1500
Facsimile:  847-368-1501

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ Ross M. Good