UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHYSICIANS HEALTHSOURCE, INC., individually and as the representative of a class of similarly-situated persons,<br><br>  Plaintiff,<br><br>  v.<br><br>VERTEX PHARMACEUTICALS INCORPORATED and TACTICAL ADVANTAGE GROUP, LLC,<br><br>  Defendant. | Case No. 1:15-cv-11517-JCB |

### PLAINTIFF'S PETITION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND NAMED PLAINTIFF'S INCENTIVE AWARD/SERVICE FEES

Class Counsel seeks an award of attorneys' fees in the amount of $1,583,333.33, plus expenses in the amount of $90,000.00[1], and an incentive award or service fee of $15,000.00 for Physicians Healthsource, Inc., the Class Representative, as reasonable compensation for obtaining the Settlement now before the Court on motion for final approval. In support of this motion, the Declaration of Ross M. Good ("Good Decl.") and the Declaration of Professor David Rosenberg ("Rosenberg Decl.") are attached hereto as Exhibit A and Exhibit B, respectively.  The result achieved in this case represents an excellent result for the class, and constitutes the largest TCPA class settlement approved in the District of Massachusetts. *See Milford & Ford Associates, Inc. v. Cell-Tek, LLC,* 1:09-cv-11261 (Aug. 17, 2011) (Doc. 96) (which settled for a common fund of $1,800,000.00 and awarded a $15,000.00 incentive award, along with attorneys' fees in the amount

---

[1] Class Counsel is only seeking $90,000.00 in expenses per the terms of the settlement agreement despite having incurred $109,524.75 in expenses. See Good Decl., ¶17.

of one-third of the common fund plus expenses).  The incentive award/service fees and attorneys' fees and expenses requested are fair, reasonable, and consistent with those awarded in similar cases.

## PROCEDURAL AND LITIGATION HISTORY

On April 4, 2015, Plaintiff filed its class action complaint asserting claims against Vertex Pharmaceuticals, Inc. ("Vertex") and Tactical Advantage Group, LLC ("TAG"), among others, alleging that transmission of the Faxes violated 47 U.S.C. 227, *et seq.*, and related FCC regulations. (Doc. No. 1.)

In June 2015, Vertex and TAG filed a motion to dismiss the class action complaint pursuant to Rule 12(b)(6).  (Doc. Nos. 19, 20, 27.)  Plaintiff opposed their motion.  (Doc. No. 21.)  In October 2015, the Court (Judge Young) held a hearing, and denied Defendants' motion.  (Doc. No. 37) On November 19, 2015, the Parties consented to have this Court adjudicate this matter (Doc. 45), and the case was reassigned here on the same day (Doc. 46).

The Court then bifurcated the proceedings and ordered that case and discovery proceed on Plaintiff's individual claim before class certification issues were addressed.  Thereafter, the Parties entered into a stipulation, approved by the Court, providing that discovery and summary judgment on Plaintiff's individual claim would occur first, and that class certification and related discovery would, if necessary, follow summary judgment on Plaintiff's individual claim. (Doc. No. 59 & 60.)

The parties engaged in substantial discovery on Plaintiff's individual claim, including the production and review of thousands of pages of documents, serving and responding to voluminous written discovery, and the depositions of Carrie Jennings (May 10, 2016) (Cincinnati); Dr. John Ruch (June 30, 2016) (Boston); Dr. Jeffrey Elwert (June 14, 2016) (Cincinnati); Kathleen Curtis (June 14, 2016) (Cincinnati); Dr. Kimberly Brown (May 31, 2016) (Detroit); Pamela Stephenson, Vertex Rule 30(b)(6) witness (June 28, 2016) (Boston); and Stephen Taglienti, TAG Rule 30(b)(6) witness (June 28, 2016) (Boston).  In addition, the Parties met and conferred on numerous occasions to address

various discovery disputes.

On July 29, 2016, in accordance with the schedule entered by the Court (Doc. 67), the Parties each filed motions for summary judgment along with statements of material fact in support of said motions, oppositions, responses to the statements of material facts, statements of additional facts, and rely briefs. (*See* Docs. 72-86, 90-102, 105-107). Vertex also filed a motion for spoliation and two motions to strike, which the parties fully briefed. (*E.g.*, Doc. No. 82, 90, 111.) In sum, he Parties' summary judgment-related submissions ran to thousands of pages, and occupy in excess of fifty entries on the Court's docket. (*See* Docs. 60-125.)

Following this extensive and hard-fought briefing, on March 28, 2017, the Court issued an order denying the Parties' motions. *See Physician's Healthsource, Inc. v. Vertex Pharm. Inc.*, 247 F. Supp. 3d 138, 152 (D. Mass. 2017). In particular, the Court: (1) denied Vertex's motions to strike, *Id.* at 142-43; (2) denied Defendants' challenge to Plaintiff's standing premised on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *Id.* at 147-50; (3) held there were triable issues of fact as to whether Plaintiff was the subscriber to the fax line that received the faxes and whether the faxes were advertisements under the TCPA or simply announcements for an educational seminar and were not actionable under the TCPA *Id.* at 148, 151; and (4) denied Vertex summary judgment on the issues of permission and whether TAG exceeded its authority regarding fax broadcasts at issue, *Id*. at 150-52.

Following contested submissions regarding the scheduling of the case going forward—Plaintiff sought class discovery while Defendants sought a trial for Plaintiff's individual claim, *see* Docs. 130, 131; the Court set a schedule for class discovery and the filing of Plaintiff's motion for class certification. (Doc. 134). During the course of class discovery, Plaintiff discovered that Vertex (through prior counsel) had failed to produce FDA-2253 submissions it had made (and was required to make pursuant to 21 C.F.R § 314.81(3)(i)) to the FDA regarding Incivek. Vertex's current counsel produced over a thousand pages of documents related to Vertex's FDA-2253 submissions, which

Plaintiff contended make clear the faxes at issue were advertisements. Plaintiff thereafter conducted a second Rule 30(b)(6) deposition of Vertex on September 18, 2017, in Boston (Pamela Stephenson). In addition, TAG produced fax transmission records (the "Transmission Records") demonstrating that 8,809 Faxes concerning the June 9 Broadcast were successfully transmitted between June 3, 2011 and June 9, 2011. Based on other discovery, Plaintiff believes that more than 8,809 Faxes were transmitted by or on behalf of Defendants, but there is no evidence identifying these other potential recipients.

As class certification discovery proceeded, Plaintiff and Vertex engaged in discussions regarding a possible resolution of the case. On September 18, 2017, Plaintiff's corporate and litigation counsel traveled to Boston to engage in a full day mediation session before Hon. Stephen Neel (Ret.). Although the mediation did not result in an immediate resolution of the case, Plaintiff and Vertex continued to discuss a potential resolution and sought and received several extensions from the Court to delay briefing of class certification and certain discovery disputes while the Parties' discussions were ongoing. (*See* Dkt Nos. 142-146.)

On November 22, 2017, Plaintiff filed a motion to certify the class along with a supporting brief. (Docs. 150-51). However, the Parties continued to engage in productive discussions, and in early December reached an agreement in principal as to key settlement terms, although certain disputes remained. Accordingly, the Parties re-engaged Judge Neel to mediate their efforts to develop a notice and claim process to effectuate the settlement. The Court stayed the case, pursuant to a request by the Parties, as their discussions progressed towards a resolution. (Docs. 157-58). Since the case has been stayed, Plaintiff and Vertex have had numerous discussions, including with Judge Neel, to negotiate and finalize the settlement, which ultimately culminated in the Settlement Agreement.

Plaintiff's commitment to the interests of the class members has been clearly demonstrated. Plaintiff has participated in three years of hard-fought litigation in this matter. From Plaintiff's standpoint, this has involved responding to seven sets of written discovery and the production of

4

thousands of pages of documents concerning it fax machine, phone service, office policies, involvement in other cases, *etc.* To this point, Vertex has deposed Plaintiff's administrative assistant, both of its owners, and taken two separate depositions of Plaintiff's corporate representative. Plaintiff also sent its corporate counsel to attend and participate in the mediation with Judge Stephen Neil (Ret.). In short, Plaintiff has committed substantial time, effort, and resources to this litigation, despite the relatively small value of its own claim, further evidencing its adequacy. *See Crowe v. Examworks, Inc.,* 136 F. Supp. 3d 16, 48 (D. Mass. 2015); *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.,* 2015 WL 7282543, at *7 (D.N.H. Nov. 16, 2015).

At the end of a difficult litigation process, Plaintiff and its counsel negotiated a settlement that provided for a Settlement Fund of $4,750,000.00. Given the significant benefits obtained on behalf of the class, the risks involved in undertaking this litigation, the process by which the requested fee was determined and the lack of objections to the requested fee award, the requested attorney fee award is unquestionably fair and reasonable.

## ARGUMENT

### I. THE REQUESTED ATTORNEYS' FEES OF ONE THIRD OF THE FUND ARE REASONABLE AND SHOULD BE APPROVED, TOGETHER WITH EXPENSES

#### A. Attorney's Fees Should Be Awarded As A Percentage Of The Common Fund

The common fund doctrine is one of the earliest recognized exceptions to the "American Rule" which generally requires that litigants bear their own costs and attorneys' fees. Premised on the equitable powers of the Court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation, or increase of a fund in which others have a common interest to be reimbursed from that fund for the litigation expenses incurred. *Central Railroad & Banking v. Pettus*, 113 U.S. 116 (1885); *See also Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) (fee was based on the entire universe of benefits made available by the settlement and was not to be diminished by those not claiming).

Under the common fund doctrine, attorneys for the representative plaintiffs in litigation resulting in a recovery for a class may petition the Court to be compensated for their efforts."[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing*, 444 U.S. at 478. Here, the efforts of Plaintiff's counsel have resulted in claims being submitted by 392 individuals and entities to share in a settlement fund of $4,750,000. Accordingly, the common fund doctrine applies.

Of note, the Supreme Court has never formally adopted or authorized the use of the *Lindy* lodestar approach in the common fund context. To the contrary, in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Court "clearly recognized the propriety of using the percentage of recovery method in a common fund case. Numerous courts have found this simple percentage method appropriate." The method by which our system encourages private attorneys to risk engaging in nationwide class litigation is to make their economic reward contingent on their success in achieving a recovery for the class they undertake to represent. *Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375 (D. Minn. 1985). The parallels between individual contingent fee cases and class actions are economically identical and invoke the same public policy considerations. As Judge Posner has explained:

> The object in awarding a reasonable attorney's fee . . . is to simulate the market . . . . The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client

*In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 572 (7thCir. 1992). See also Rosenberg Decl.

In his Declaration, Professor Rosenberg explains why the fees requested are reasonable and why the percentage of recovery method for attorneys' fees is far and away superior to use of the lodestar method either alone or as a cross-check and that no justification exists for employing the inferior method in this case. Rosenberg notes that class actions result in both compensation and deterrent benefits. See Rosenberg Decl., ¶6. Rosenberg's expert report analyzes the attorneys' fees

requested in this case to similar cases and explains his rationale for finding the contingent fee request is the optimal Court-awarded fee. *Id*., ¶8-22. Rosenberg also addresses the concern this Court expressed at preliminary approval regarding the requested attorneys' fees by analyzing a lodestar cross-check on the requested attorneys' fees. *Id*., ¶23(d), 50-52. The lodestar method is systematically biased "against class counsel funding prosecution of the class claim on a contingent percentage basis with possible return on this investment deferred possibly for years." *Id*., ¶42. Rosenberg's report demonstrates that the *ex ante* contingent fee recovery method for attorneys' fees is far and away superior to the *ex post* lodestar method either alone or as a cross-check. *Id*., ¶38-44.[2]

Rosenberg criticizes the "Reapportionment Approach" of lowering attorneys' fees because it results in suboptimal "anti -class and -social consequences because by design and operation it reduces class counsel's compensation below the optimal level, below the promise of compensation providing class counsel with the financial incentive needed for them to make the class recovery maximizing investment." *Id*., ¶29-35.[3] Rosenberg explains that "class counsel's optimal investment strategy seeks to produce the greatest class recovery not in total gross amount, but in total net amount, after subtracting the costs of production. This is achieved by class counsel ceasing further expenditures of time, money, and risk-bearing at the point when returns turn negative, that is, when additional costs of production exceed expected benefits in higher class recovery on the margin." *Id.,* ¶30. Additionally, Rosenberg finds that "the reapportionment approach can greatly reduce the expected class recovery, and with it class members' compensation and society's deterrence benefits." *Id*., ¶30.

---

[2] The lodestar "method for deriving and applying the multiplier is to calculate the inverse or reciprocal of the chance of recovery (essentially the ratio of the chance of nonrecovery to a 100% chance of recovery (or 1)) and multiply that number times the reasonable amount of compensation needed to cover class counsel's optimal time and monetary investment." Rosenberg Decl, ¶44.

[3] In this case, any reapportionment of class counsel's requested fee would result in a windfall for Defendant.

**B.     The Requested One Third Percent Fee Award Is Fair and Reasonable under Factors Considered by Courts in the First Circuit**

While the First Circuit has not established specific factors to be used in evaluating the reasonableness of a fee request, district courts within the First Circuit have applied factors developed by other courts. For example, in *In re TJX Cos. Retail Sec. Breach Litig.* 584 F. Supp. 2d 395, 401 (D. Mass 2008), the court looked to the following factors in assessing the reasonableness of attorneys' fees: (1) the reaction of class members to the settlement and proposed attorneys' fees; (2) the skill and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risk that the litigation will be unsuccessful; (5) the amount of time devoted to the case by counsel; and (6) the extent of the benefit obtained. *See also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *In re Lupron Mktg. and Sales Practices Litig.*, No. 01- 10861, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005). Counsel respectfully submit that the requested fee in this case – 33 1/3% of the gross settlement fund -- is fair and reasonable, particularly in light of the extensive efforts and risks faced over the course of more than three years of constant litigation on multiple fronts, and it is well within the range of fees awarded by courts in this and other circuits.

    **1.     Reaction of the Class Members.**

The reaction of the Class to the Settlement has been very positive. Notably, no one requested exclusion to this Settlement, and no objections were lodged concerning the settlement or the amount of the requested fee award. See Declaration of Class Administrator Dorothy Sue Merryman filed concurrently herewith and attached to Plaintiff's Memorandum in Support of Plaintiff's Unopposed Motion for Final Approval of the Stipulation of Class Action Settlement as Exhibit 2. Nor has any class member objected to the requested amount of the named Plaintiff's incentive award. *Id*. The fact that no class members have objected to the fee request strongly supports a finding that the fee request is reasonable.

### 2.     The Skill and Efficiency of the Attorneys Involved.

The quality of the representation and the standing of counsel at the bar are important factors in determining the reasonableness of the requested fee. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). Class Counsel have extensive experience prosecuting TCPA Class Actions. *See Firm Resume of Anderson + Wanca,* Exhibit 1 to Good Decl. The quality of Counsel's work in this case is apparent from the vigorous prosecution of this action, on multiple fronts, over the course of three years and from the excellent result obtained for the Class. Class Counsel has secured the largest TCPA settlement to date in the District of Massachusetts, see and compare *Milford & Ford Associates, Inc. v. Cell-Tek, LLC, et al.,* 1:09-cv-11261. This factor supports the fairness and reasonableness of Counsel's request for a fee award in an amount of one third of the Settlement Fund.

### 3.     Complexity and Duration of the Litigation

The complexity of the litigation is another factor courts examine in evaluating the reasonableness of attorneys' fees requested by class counsel. *In re Relafen,* 231 F.R.D. at 84. Given the complexity and duration of this TCPA class action outlined above as well as its duration, the fee requested is fair and reasonable.  In addition, had the case not settled, Defendants would have been required to respond to Plaintiff's motion for class certification.  An issue that would have been hard fought would be ascertainability of the class.  Plaintiff proposed two classes—Class A consisted of all individuals and entities that appeared on the AmFax transmission logs produced by TAG; Class B consisted of all persons or entities who were successfully sent a fax regarding Incivek regardless of whether they were contained on fax transmission logs.  In the First Circuit, there is an implicit requirement that a class be sufficiently "definite" to allow the court to ascertain whether a claimant is a member based on "objective criteria." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (holding class of "purchasers" was ascertainable); *Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012) (holding job title was "objective criterion"). This Court's decision as the ascertainability

issue, particularly regarding the treatment of missing fax logs, *see* Pl.'s Class Cert. Mem., Doc. 151, at 18-20, and other Rule 23 criteria for class certification, may very well have resulted in an attempted Rule 23(f) petition by either Plaintiff or Defendants. While the First Circuit need not accept such a petition if it did, the case in all likelihood would have been stayed pending disposition of said Rule 23(f) appeal.

Assuming *arguendo* that a class was certified, a trial date (for a jury trial) would have to be set for a trial Plaintiff anticipates would have lasted at least a week. In addition, the Parties would necessarily be required to submit pretrial filings and ensure the presence of a substantial number of witnesses at the trial. Following trial, either Party could appeal, again extending this litigation for a substantial amount of time.

### 4. The Risk that the Litigation Will Be Unsuccessful

#### a. Success at Trial Was Far from Guaranteed

Although Plaintiff and Counsel strongly believe in the merits of this action, the proposed Class faced a very real risk of recovering nothing at all if the case continued. Defendants raised a number of issues that could have led to the dismissal of Plaintiff's claims prior to trial if accepted by the Court. As set forth above, the issues to be considered by the jury are whether Plaintiff was the subscriber of the fax number to which the faxes were sent, and whether the faxes were advertisements under the TCPA (or whether they simply announced an educational seminar and were not actionable under the TCPA). Of note, this is not a case wherein a class was certified and then the Parties reached a settlement. Rather, the Court has already denied summary judgment as to whether Plaintiff is the subscriber of the fax line and as to the issue of whether the faxes were advertisements. As to the latter, while Plaintiff maintains that the FDA Form 2253s would tip the balance in Plaintiff's favor and result in a jury finding that the faxes are advertisements, the fact of the matter is that a jury might not think so, as this Court pointed out in denying summary judgment Vertex, 247 F. Supp.3d at 151.

Finally, the "advertisement" issue is further complicated in that it is Plaintiff's position that a fax announcing a seminar is an advertisement under the FCC regulations. *See In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 21 FCC Rcd. 3787, 3812 ¶ 52 (Apr. 6, 2006) ("2006 Order"). In the event a jury found otherwise, that issue would be appealed to the First Circuit. Of course, there is no guarantee of success in such an appeal.

      b. **The Contingent Nature of Counsel's Representation Also Supports the Requested Fee**

"Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N.*, 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004); *In re Am. Bank Note*, 127 F. Supp. 2d 417 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569- 70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

The reasonableness of the requested fee is supported by an evaluation of the risks undertaken by Counsel in prosecuting this complex TCPA class action. Counsel undertook this action on a wholly contingent basis, investing a substantial amount of time and money to prosecute this action with no guarantee of compensation or even the recovery of out-of-pocket expenses. Unlike counsel for Defendants, who are paid hourly rates and reimbursed for their expenses on a regular basis, Counsel have not been compensated for any of their time or expenses since this case began and would receive no compensation or even reimbursement of expenses if they are not successful. From the outset, Counsel understood they were embarking on a complex, expensive, and lengthy litigation against a

11

large pharmaceutical company with no guarantee of ever being compensated for the enormous investment of time and money the case would require. Counsel were obligated to assure that sufficient attorney and support resources were dedicated to the prosecution of the action and that funds were available to compensate staff and to pay for the considerable out-of-pocket costs a case such as this entails. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. The factor labeled by the courts as "the risks of litigation" is not an empty phrase.

### 5. The Amount of Time Devoted to the Case by Counsel

Counsel have expended substantial time and effort pursuing the Actions on behalf of the Class. Since its inception, Counsel and their professional support staff devoted over 1,500 hours to this case to achieve the Settlement. See Good Decl., ¶18.

### C. Counsel's Lodestar Supports Their One Third Fee Request.

The requested fees are more than fair and reasonable when evaluated in relation to Counsel's lodestar. In the First Circuit, the lodestar approach can serve as a check on the appropriateness of the percentage of funds fee, though it is not required. *New England Carpenters Health Benefits Fund v. First Databank, Inc.,* No. 05-11148, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009) (citations omitted). Under the lodestar method, a Court must engage in a two-step analysis: first, to determine the lodestar, the Court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the Court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorney's work. *See, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167- 69 (3d Cir. 1973), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*). Performing the lodestar crosscheck here confirms that the fee requested by Counsel is reasonable and should be

approved. As set forth above, Counsel and their professional support staff devoted over 1,500 hours to this case, with a lodestar value of $807,148.16, to achieve the Settlement.

### D. The Extent of the Benefit Obtained Supports the Requested Fee

The proposed Settlement is extremely beneficial to the Class. Pursuant to the Parties' Settlement Agreement, the Class obtained an immediate benefit of $4,750,000 minus fees and expenses, which is the largest TCPA recovery in District of Massachusetts history. *See Milford & Ford, Associates, Inc., et al., v. Cell-Tek, LLC* 1:09-cv-11261 (Aug 17, 20911, Doc. 96) involving a common fund of $1,800,000.00 where one-third in fees and expenses was awarded. *See Good Decl.*, ¶18.

### E. The Requested Fees Are Well Within the Range of Fees Awarded in Similar Cases.

Use of the percentage method decreases burdening the court by eliminating a time-consuming detailed lodestar analysis while assuring that the beneficiaries don't experience delay in receiving their portion of the settlement. *See, Manual For Complex Litigation, Fourth* § 14.121 (2004); *see also, In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire. Litig.,* 56 F 3d 295, 307 (1st Cir. 1995) (percentage-of-the fund method for determining fees is appropriate in a common fund settlement, because it "enhances efficiency" and better approximates the working of the marketplace).

The requested percentage of one third of the Settlement Fund falls squarely within the amount approved by Massachusetts Courts and nationwide in similar Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") suits. For example, Class Counsel was awarded one-third plus expenses of a $23 million settlement in a TCPA fax case in *Fauley v. Metro Life Ins. Co.,* 2016 IL App (2d) 150236, ¶ 57, 52 N.E.3d 427, 440, *cert. denied*, 60 N.E.3d 872 (Ill. 2016). Several objectors argued that this "amount was excessive" and that the trial court erred by not applying a lodestar cross-check. *Id.* The appellate court rejected these arguments and affirmed the one-third attorney fee of $7.6 million. *Id.* The appellate court further held that the fee was reasonable where A+W's lodestar was $2.5 million,

and so "had the trial court used the lodestar method, the effective multiplier would have been approximately 2.97," which was "well within the range of multipliers used in other common-fund cases," and justified in light of the "substantial risk in prosecuting this case under a contingency fee agreement given the vigorous defense of the case and defenses asserted by [the defendant]." *Id.* ¶ 59, 52 N.E.3d at 441 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (noting that a survey of multipliers showed a range from 0.6 to 19.6, with most ranging from 1 to 4, and a "bare majority" ranging from 1.5 to 3.0)). *See also*, *Hageman v. AT&T Mobility LLC,* No. 13-cv-00050-BLG-RW, 2015 WL 9855925, at *5-6 (D. Mont. Feb. 11, 2015) awarding one-third in attorney fees of the $45 million recovery.

Plaintiff's Counsel has been awarded the one-third plus expenses in many other cases. *See, e.g.*, *American Copper & Brass, Inc. v. Lake City Industrial Products, Inc.,* Case No. 09-cv-1162 (W.D. Mich. March 1, 2016) (Doc. 278) (Exhibit C); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.,* Case No. 12-cv-2257 (N.D. Ohio Feb. 9, 2016) (Doc. 73) (Exhibit D); *Sandusky Wellness Center v. Heel Inc.,* Case No. 12-cv-1470 (N.D. Ohio April 25, 2014) (Doc. 95) (Exhibit E). This is consistent with the one third fee awards approved in state court in Massachusetts for TCPA class actions. *See Mulhern v. MacLeod d/b/a ABC Mortgage,* Norfolk Superior Court, 2005-1619 (J. Donovan); *Fray-Witzer v. Olde Stone Land Survey Company, Inc.,* Suffolk Superior Court, C.A. 2008-04175 (Roach) (Exhibit F); *Michael Collins, et al. v. Locks & Keys of Woburn, Inc.,* Suffolk Superior Court 07-4207 (J. Sanders) (Exhibit G); *Blue Wave Corporation v. North End Chiropractic LLC, et al.,* Suffolk Superior Court 2010-01571 (Exhibit H). Professor Rosenberg also attests that the requested fees are reasonable and in keeping with reported cases. See Rosenberg Decl., ¶12-22.

### III.  PLAINTIFF PHYSICIANS HEALTHSOURCE, INC. SHOULD RECEIVE THE REQUESTED INCENTIVE FEES.

Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case contribution awards to plaintiffs who instituted and prosecuted actions on the theory that there would

be no class-wide benefit absent their suits. These awards recognize the burdens assumed by plaintiff litigants in instituting and prosecuting the actions, the time spent by plaintiffs on communicating with counsel and fulfilling class responsibilities of supervision, and the risks that plaintiffs bear in bringing the suit. *See In re Relafen*, 231 F.R.D. at 82 (D. Mass. 2005) (approving class incentive awards of $8,000.00, $9,000.00, and $14,000.00).

"In granting incentive awards to named plaintiffs in class actions, courts consider not only the efforts of the plaintiffs in pursuing the claims, but also the important public policy of fostering enforcement laws and rewarding representative plaintiffs for being instrumental in obtaining recoveries for persons other than themselves." *Bussie v. Allamerica Fin. Corp.*, 1999 WL 342042, at *3 (D. Mass. May 19, 1999).

Plaintiff should be compensated for its efforts that produced a successful result for the class. Plaintiff devoted a substantial amount of time preparing the matter for litigation, responding to seven sets of written discovery, sitting for depositions (two principals and three employees were deposed), and overseeing major case activities, including settlement negotiations. The requested $15,000.00 incentive award is reasonable compensation for its efforts and assistance in obtaining the $4,750,000.00 settlement for the Class.

The amount of this award is consistent with those approved by this Court and in Massachusetts state court in similar TCPA class actions for class representatives who had a high level of involvement and serves to vindicate the goal of promoting enforcement of consumer protection statutes such as the TCPA. *See Fray-Witzer v. Olde Stone Land Survey Company, Inc.,* Suffolk Superior Court, C.A. 08-04175 (approving $15,000 incentive award to named plaintiff) (Exhibit F); *Milford & Ford Associates, Inc. and D. Michael Collins v. Cell-Tek,* Case No. 1:09-cv-11261-DPW (Doc. 96 - Aug 17, 2011) approving $15,000.00 (Exhibit I).

*In re Lupron,* 2005 WL 2006833, at *7, *quoting Denney v. Jenkens & Gilchrist,* 2005 WL

388562 (S.D.N.Y. February 18, 2005) at *31 ("Incentive awards serve an important function in promoting class action settlements, particularly where…the named plaintiffs participated actively in the litigation").

Here, awarding the class representative $15,000.00 will not reduce the amount to the class and Defendant Vertex has agreed not to oppose that amount. Furthermore, there is no reason to reduce that amount because any reduction would result in money being returned to Defendant Vertex.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Physicians Healthsource, Inc. respectfully requests that the Court grant its request for an award of attorneys' fees in the amount of $1,583,000.00, reimbursement of expenses in the amount of $90,000.00, and an incentive award for Plaintiff in the amount of $15,000.00, all of which are reasonable with the complexity and amount of work done in this case.

Respectfully submitted,

/s/ Ross M. Good
Ross M. Good *(admitted pro hac vice)*
Brian J. Wanca *(admitted pro hac vice)*
ANDERSON + WANCA
3701 Algonquin Rd., Suite 500
Rolling Meadows, IL 60008
847-368-1500
847-368-1501(fax)

Alan L. Cantor (072360)
SWARTZ & SWARTZ
10 Marshall Street
Boston, MA 02108
(617) 742-1900
(617) 367-7193 (fax)

Matthew E. Stubbs *(admitted pro hac vice)*
MONTGOMERY, RENNIE & JONSON
36 E. Seventh Street, Suite 2100
Cincinnati, Ohio 45202
(513) 241-4722
(513) 241-8775 (FAX)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2018, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept the electronic filing. Notice of this filing will be sent be e-mail to all parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Ross M. Good
Ross M. Good